IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | No. 15 C 11552 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MAHMOUD SALEH, | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Mahmoud Saleh has filed a pro se motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence.[1] The government opposes the motion. For the reasons discussed below, petitioner's motion is denied.

**BACKGROUND**

On March 12, 2013, petitioner pled guilty to two counts of wire fraud in connection with a mortgage fraud scheme. Petitioner (who had served approximately 27 months of pretrial detention before being released on bond) was sentenced on March 26, 2014, to 48 months of imprisonment. Petitioner did not directly appeal his conviction or sentence. Following petitioner's sentencing, the government learned of an investigation to which previous information petitioner had provided during proffer sessions may be relevant. On July 28, 2014, the government filed a prospective Rule 35(b) motion and a motion to continue petitioner's surrender date. In light of the government's motion, the court struck petitioner's surrender date, allowing him to engage in additional proffers with the government.

---

[1] Petitioner's criminal case number was 08 CR 36-2.

On January 7, 2015, the government filed a motion pursuant to Rule 35(b)(1) to reduce petitioner's sentence by three months. The court granted the government's motion, reducing petitioner's sentence by six months on May 14, 2015. Petitioner filed a notice of appeal from this court's decision on the Rule 35(b) motion on May 27, 2015. After the Seventh Circuit appointed counsel to represent petitioner on appeal, petitioner, through counsel, moved to dismiss his appeal. The Seventh Circuit granted petitioner's motion on December 16, 2015. According to the Bureau of Prisons' ("BOP") website, petitioner was released from BOP's custody on March 18, 2016. Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 4, 2016).

## DISCUSSION

Petitioner filed the instant motion on December 14, 2015.[2] In his motion, petitioner asserts that: (1) Judge Manning, who presided over his criminal case prior to its reassignment to this court in March 2012, suffered from "medical disabilities" that prevented her from handling the case properly; (2) Judge Manning erred in denying his request for a second psychological evaluation; (3) the government improperly failed to file a motion to reduce his sentence pursuant to U.S.S.C. § 5K1.1 prior to his original sentencing; (4) he was prejudiced by the actions of one of his co-defendant's lawyers; (5) the court improperly received and reviewed information from the government ex parte; (6) the government's lawyer should have recused herself because of alleged bias and prejudice; (7) defense counsel provided ineffective assistance following the

---

[2] In the certificate of service filed with his motion, petitioner stated that he deposited the motion in the inmate mail system on December 14, 2015. See Houston v. Lack, 487 U.S. 266 (1988) (holding that a pro se prisoner "files" a document on the date that the prisoner delivers that document to prison authorities to be mailed to the court).

2

government's Rule 35(b) motion; and (8) he is entitled to relief pursuant to the plain error doctrine and the All Writs Act in the event that relief is unavailable under § 2255.

**1.      Legal Standard**

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. Relief pursuant to § 2255, however, "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). When considering a § 2255 motion, the district court reviews the record and draws all reasonable inferences in favor of the government. See Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

**2.      Analysis**

**A.      Timeliness**

Pursuant to § 2255(f), a motion to vacate, set aside, or correct a sentence must be filed within a one-year period that begins to run from the latest of the following dates: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts

supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

The government contends that petitioner's motion is time-barred because it was filed more than a year after his sentence became final. See 28 U.S.C. § 2255(f)(1) (petitioner has one-year to file a motion to vacate his sentence from the date on which the judgment becomes final). Petitioner was sentenced on March 26, 2014, and the judgment and commitment order was entered on the docket on April 10, 2014. Petitioner subsequently moved the court to reconsider his sentence, which the court denied on April 16, 2014. Because the filing of a motion under Fed. R. Crim. P. 35[3] does not suspend the time for filing a notice of appeal from a judgment of conviction, United States v. Townsend, 762 F.3d 641, 645 (7th Cir. 2014), petitioner's conviction and original sentence became final on April 25, 2014. Clarke v. United States, 703 F.3d 1098, 1100 (7th Cir. 2013) (conviction and sentence final upon expiration of fourteen day appeal period). Accordingly, petitioner's § 2255 motion as it relates to his conviction and original sentence, filed on December 14, 2015, is more than seven months past the one-year deadline.

In his reply brief, petitioner argues that the motion was in fact timely because his conviction and sentence did not become final until May 2015 when the court reduced his sentence pursuant to the government's Rule 35(b) motion. As other circuits have held, however, petitioner's sentence modification under Rule 35(b) was not a "judgment of conviction." See

---

[3] Although petitioner's motion to reconsider was not styled as a Rule 35(a) motion, 18 U.S.C. § 3582(c)(1)(B) provides that "The court may not modify a term of imprisonment once it has been imposed except . . . to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."

4

Byers v. United States, 561 F.3d 832, 835 (8th Cir. 2009); United States v. Sanders, 247 F.3d 139, 142-43 (4th Cir. 2001) ("Congress did not intend for Fed. R. Crim. Pro. 35(b) motions to prevent convictions from becoming final for § 2255 purposes."); United States v. Schwartz, 274 F.3d 1220, 1224 (9th Cir. 2001). As such, petitioner's sentence reduction did not affect the finality of his conviction and original sentence.

Petitioner next appears to argue that his motion is not untimely because the government delayed filing its Rule 35(b) motion, during which time he was not in custody. While it is true that petitioner did not report to the BOP until June 2, 2015, "[a] person whose incarceration lies in the future is in custody and has full access to § 2255." Godoski v. United States, 304 F.3d 761, 762-63 (7th Cir. 2002). As discussed above, petitioner was originally sentenced on March 26, 2014, at which time the court ordered that he surrender to the BOP on May 20, 2014. Although petitioner's surrender date was subsequently extended numerous times,[4] his incarceration lay in the future, allowing him to seek relief pursuant to § 2255. Accordingly, the timing of the government's Rule 35(b) motion was not an impediment to petitioner timely filing his § 2255 motion.

---

[4] At petitioner's request, the court extended his surrender date until July 15, 2014, so that he could receive certain medical diagnostic work. The court again, upon petitioner's request, extended his surrender date to August 19, 2014, to allow him to continue receiving medical testing and treatment. On July 28, 2014, the government filed a protective motion for possible reduction of sentence pursuant to Rule 35(b), after which the court struck petitioner's August 2014 surrender date. The government then filed a Rule 35(b) motion seeking to reduce petitioner's sentence on January 7, 2015. On May 14, 2015, the court granted the government's Rule 35(b) motion, reducing petitioner's sentence by six months and ordering him to surrender to the BOP by June 2, 2015.

Nor does the timing of the government's Rule 35(b) motion merit equitable tolling of the one-year statute of limitations. Equitable tolling is a remedy reserved for "[e]xtraordinary circumstances far beyond the litigant's control [that] . . . prevented timely filing." Modrowski v. Mote, 322 F.3d 965, 967 (7th Cir. 2003) (internal quotations omitted). Rule 35(b)(1) provides that the government may make a motion to reduce a defendant's sentence for substantial assistance within one year of sentencing. Here, not only did the government make its Rule 35(b) motion within one year of petitioner's March 2014 sentencing (on January 7, 2015), but also alerted the court and petitioner a mere four months after petitioner's sentencing that it may be making the motion (on July 28, 2014).

Finally, contrary to petitioner's arguments, he has not presented new facts that would extend the one-year filing period pursuant to § 2255(f)(4). See 28 U.S.C. § 2255(f)(4) (providing that the one-year statute of limitations may run from "the date on which the facts supporting the [§ 2255] claim or claims presented could have been discovered through the exercise of due diligence"). Judge Manning's status as a Senior District Judge, as well as the fact that petitioner's criminal case was transferred to the undersigned, are not newly discovered facts. Judge Manning's status as a Senior District Judge was information available to petitioner from the time she was assigned to his case. Similarly, Judge Manning's rulings and the reassignment of petitioner's case were well within petitioner's knowledge as those events occurred, years before the one year period within which petitioner had to file his § 2255 motion following his conviction becoming final. Petitioner, moreover, has not submitted any evidence

in support of his "belief" that Judge Manning was prevented from making proper rulings[5] because of "either her age" or "medical disabilities" during her time presiding over his criminal case.

Nor does petitioner's recent bipolar diagnosis qualify as a newly discovered fact triggering the statute of limitations under § 2255(f)(4). In his reply brief, petitioner argues, for the first time, that his guilty plea was made neither knowingly nor intelligently. In support of this argument, petitioner submits a letter dated February 16, 2016, from a psychologist at the Moshannon Valley Correctional Center, stating that petitioner had begun "seeking help from the Psychology department in January 2016." Doc. 17. The letter further states that "[b]ased on the symptoms inmate Saleh presented, he was diagnosed with Bipolar Disorder." Id.

The fact that petitioner was recently diagnosed with bipolar disorder does not support his claim that he was incompetent to enter into the plea agreement more than three years ago. See, e.g., United States v. Fuller, 15 F.3d 646, 650 (7th Cir. 1994) (the defendant "must establish that *at the time of his plea* the impairment of his mental faculties made him incapable of fully understanding the charges against him, his constitutional rights, and the consequences of his plea.") (Emphasis added). Moreover, petitioner's mental health issues are not newly discovered facts. Petitioner's mental health was a hotly contested issue during bond proceedings, at which time petitioner advocated vigorously for his re-release from pretrial custody because of

---

[5] Petitioner identifies only one of Judge Manning's rulings in support of his claim, arguing that she "erroneously" denied his request for a second psychological evaluation. However, as the government points out, Judge Manning granted petitioner's motion for appointment of a forensic psychologist to the extent that the psychologist's report would be at no cost. Criminal Docket No. 354. Judge Manning denied the motion without prejudice only to the extent that the psychological services were fee-based, requiring petitioner's counsel to "submit an appropriate voucher for the court's consideration." Id.

improvements in his mental health. See, e.g., Criminal Docket No. 358. During these proceedings, petitioner submitted an affidavit in support of his pretrial release, discussing the fact that he had been diagnosed with Chronic Manic Depression in November 2009. Id. at Exhibit 3. Petitioner also acknowledged his mental health history under oath during his change of plea hearing, noting that "[i]t was a whole ordeal back then," but that he was "[v]ery competent and" knew what he was doing. Criminal Docket No. 968. In fact, petitioner himself admits in his reply brief that he "is never in the right state of mind . . . has been suffering from such for years; before this matter even existed." As evident from the record, petitioner was aware of his mental health issues, and the impact they had on his mental functioning, long before he was formally diagnosed with bipolar disorder.

Because petitioner failed to seek § 2255 relief within a year of his conviction and original sentence becoming final, petitioner is now barred from collaterally challenging either.[6]

### B. Procedural Default

Even assuming *arguendo* that petitioner's motion was timely, with the exception of his ineffective assistance of counsel claim, all of petitioner's claims, including his complaints concerning the Rule 35(b) proceedings, are procedurally barred. The Seventh Circuit has made clear that § 2255 petitions are "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (internal quotations omitted). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there

---

[6] The court will not, as petitioner requests, apply the All Writs Act, 28 U.S.C. § 1651, to override § 2255's limitations. As held by the Seventh Circuit, "it is entirely inappropriate for the judiciary to invoke the common law to override limitations enacted by Congress, such as the period of limitations in § 2255." Godoski, 304 F.3d at 763.

8

is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994). Because petitioner did not appeal his conviction and original sentence and dismissed his direct appeal related to the Rule 35(b) proceedings, he is now barred from raising any claims that he could have raised on appeal.

Petitioner appears to argue that his procedural default should be excused because he was "deprived" of his ability to file a direct appeal "from his motion to reconsider due to the Court's wrong and unintentional misleading statement." Petitioner contends that had the court not voiced jurisdictional concerns during the April 16, 2014, hearing on his motion to reconsider his sentence, he and his "counsel would have appealed" the court's denial of the motion. According to petitioner, because he "assumed that such statements were honestly stated and were correct," he did not appeal the court's decision.

Although a procedurally defaulted claim may be heard on the merits where the petitioner can show cause and prejudice from the default, petitioner has failed to identify any objective factor external to the defense that impeded his ability to appeal. Coleman v. Thompson, 501 U.S. 722, 753 (1991). The court correctly ruled that it was without jurisdiction to consider petitioner's motion to reconsider his sentence. See Townsend, 762 F.3d at 645 ("In the absence of a motion from the government, the court has authority to modify a sentence [pursuant to Rule 35] only if the sentence originally imposed resulted from arithmetical, technical, or other clear error." (Internal quotes omitted)). However, even if the court's statements were incorrect (which they were not), petitioner was in no way prevented from appealing the court's denial of

9

that motion. Nor was petitioner prevented at that time from appealing his original sentence and conviction, as the fourteen day time period within which to appeal had yet to run.

## C. Ineffective Assistance of Counsel

Because an ineffective assistance of counsel claim may be brought in a § 2255 motion regardless of whether the claim was raised on appeal, petitioner's ineffective assistance of counsel claim related to the Rule 35(b) proceedings is not procedurally barred. Massaro v. United States, 538 U.S. 500, 504 (2003). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient, and that counsel's deficient performance "prejudiced his defense." Strickland v. Washington, 466 U.S. 668, 687, 696 (1983); Whitman v. Bartow, 434 F.3d 968, 972 (7th Cir. 2006). To show that counsel's performance was deficient, the petitioner must demonstrate that the representation "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner complains that Robert Clarke, the attorney appointed to assist him during the Rule 35(b) proceedings, provided ineffective assistance in five ways. First, petitioner contends that because Clarke was involved in a "monstrous trial" during his representation of petitioner "he was unable to properly represent" petitioner and that "due to such[,] caused [him] prejudice." Second, petitioner argues that Clarke was ineffective because "[f]rom day one," Clarke "failed to quickly and adequately contact" him. Third, petitioner claims that Clarke failed to act on two "opportunities," presumably concerning his cooperation with the government, which "would

10

have resulted in a substantial outcome in favor of [him] and his current conditions would have been much different." Fourth, petitioner argues that Clarke improperly and unilaterally suggested that the court conduct "an ex-parte hearing regarding the sensitive material which the government would not disclose to [him] in connection with the Rule 35 proceedings." Finally, petitioner complains that Clarke obstructed his allocution during the Rule 35(b) proceedings, which "affected [his] opportunity to not only convince this Court of a generous reduction, but also caused failure to preserve certain actions and misconduct of the government for appeal purposes."

Four out of five of petitioner's claims are too broad and vague to establish that Clarke's performance fell below an objective standard of reasonableness. With respect to petitioner's first two complaints – that Clarke was unable to properly represent him because of other work obligations and failed to promptly contact him – petitioner does not provide any specific acts or omissions that he alleges constitute ineffective assistance of counsel. See Menzer v. United States, 200 F.3d 1000, 1003 (7th Cir. 2000) ("To demonstrate that counsel's performance is deficient, the defendant must establish the specific acts or omissions of his counsel which he alleges constitute ineffective assistance."). These conclusory allegations of poor performance are also insufficient to satisfy Strickland's prejudice standard, as petitioner has not submitted any evidence nor articulated how additional meetings with Clarke or Clarke having a lighter caseload would have resulted in his sentence being further reduced.

Likewise, petitioner's complaints concerning Clarke's failure to act on two "opportunities" for petitioner to further cooperate with the government, lack factual detail and are too vague for the court to assess counsel's performance. As with his first two claims,

11

petitioner again fails to produce any evidence that had the "opportunities" been realized the government would have been likely to seek a more generous reduction. Nor does petitioner provide the court with any factual detail concerning what he would have said had counsel not interrupted his allocution or how that information would have been likely to have convinced the court to reduce petitioner's sentence by more than six months.

Finally, the court concludes that Clarke's performance with respect to the ex parte, in camera hearing was not deficient.[7] Petitioner primarily takes issue with counsel's suggestion to hold such a hearing because he was not consulted prior to the suggestion being made. Petitioner further argues that suggesting the ex parte hearing was improper because it deprived him of being able to argue for a greater sentence reduction based on what was discussed during the hearing. According to petitioner, counsel's suggestion to have the ex parte hearing was a "poor decision."

Even without applying Strickland's highly deferential standard of scrutiny, the court is confident that counsel's conduct was well within the range of reasonable professional assistance. Contrary to petitioner's arguments, ex parte, in camera hearings are not unconstitutional. See, e.g., United States v. Boender, 649 F.3d 650 (7th Cir. 2011) (holding that in camera review of materials was appropriate where they might reveal evidence sufficient to establish the claim that the crime-fraud exception applies); see also McKinney v. Meese, 831 F.2d 728 (7th Cir. 1987) (holding that petitioner was not entitled to materials reviewed in camera concerning the

---

[7] Clarke suggested that the court hold an ex parte, in camera hearing during the hearing on the government's Rule 35(b) motion to help the court examine the extent to which the information petitioner provided to the government during several proffers was of substantial assistance. See Criminal Docket No. 927.

reliability of a confidential informant); see also United States v. Ousley, 100 F.3d 75, 77 n.1 (7th Cir. 1996) ("[A] district court may properly maintain the secrecy of the details of an ongoing grand jury investigation when considering a motion to exclude time under the Speedy Trial Act by reviewing sensitive items ex parte and in camera.") (internal quotations omitted).

In advocating for a greater sentence reduction than the three months proposed by the government in its Rule 35(b) motion, Clarke wanted to ensure, as he informed the court during its April 23, 2015, hearing, that the court was able to ascertain the real significance of the information petitioner provided to the government. Because some of the information provided by petitioner was related to an ongoing grand jury investigation, and therefore secret, Clarke reasonably suggested that the court review the information in camera without the presence of defendant or defense counsel. This strategic decision, made after extensive motion practice and multiple hearings concerning the government's Rule 35(b) motion, was a strategic decision that comfortably falls within the wide range of professionally competent assistance. See Vinyard v. United States, 804 F.3d 1218, 1225 (7th Cir. 2015) (quoting Strickland, 466 U.S. at 690) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'").

## **CONCLUSION**

For the reasons discussed above, petitioner's § 2255 motion (doc. 1) to vacate his conviction and sentence is denied. The court dismisses as moot petitioner's emergency motion (doc. 6) to compel government to respond to Saleh's 2255 motion, emergency motion (doc. 7) to writ and mandate Saleh back to the district, verified emergency motion (doc. 8) to substitute and

recuse Magistrate Judge Michael T. Mason for cause, and emergency verified motion (doc. 11) to appoint counsel and to place Saleh in proper facility.

**ENTER:** May 13, 2016

_____
**Robert W. Gettleman
United States District Judge**